UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

          -v.-                                        :

                                                           S1 11 Cr. 1032 (PAE)

JOSEPH HERNANDEZ,                            :

                  Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

PREET BHARARA
*United States Attorney*
*Southern District of New York*
*Attorney for the United States*
*of America*

NOLA B. HELLER
JESSICA ORTIZ
RACHEL MAIMIN
SARAH KRISSOFF
Assistant United States Attorneys,
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

          -v.-          :

                                                       S1 11 Cr. 1032 (PAE)

JOSEPH HERNANDEZ,          :

                Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

### I. PRELIMINARY STATEMENT

The United States of America, through its attorney Preet Bharara, United States Attorney

for the Southern District of New York, respectfully submits this sentencing memorandum in

advance of the sentencing of defendant Joseph Hernandez ("Hernandez"), which is scheduled for

January 18, 2012, at 11:15 a.m.  The Government respectfully requests that the Court sentence

Hernandez to a Guidelines sentence of between 30 and 37 months' imprisonment.  Such a sentence

would be sufficient, but not greater than necessary, to account for the factors set forth at Title 18,

United States Code, Section 3553(a).

### II. BACKGROUND

**A.    The Offense Conduct**

As described in the pre-sentence investigation report ("PSR") dated January 4, 2013, the S1

Indictment in this case charged fifty members and associates of the Bronx Trinitarios Gang

("BTG") with participation in racketeering, narcotics, and firearms offenses between in or about

2003 and in or about December 2011.  The PSR articulates in detail the operations of the

Trinitarios Gang, from its formation in the New York state prison system to the functioning of the BTG on the streets of the Bronx.  PSR ¶¶ 42-46.  As noted in the PSR's recommendation, the BTG "flooded the local community with drugs through high volume, street level drug sales; dominated the local drug trade and protected [its] drug-dealing locations through acts of violence (appearing, at times, to relish opportunities to engaged in violent behavior); and possessed and used firearms and other weapons to engage in violent behavior."  PSR page 28.  The PSR concisely summarizes the destruction wrought by the BTG and its associates during the extended time period of the charged crimes.  BTG members and associates terrorized the northwest Bronx on a daily basis by selling drugs in an open-air market, possessing firearms and other weapons, and committing frequent stabbings and shootings of rival gang members and drug dealers using those weapons.  As is now charged in the S4 Indictment in this case, BTG members are responsible for at least nine homicides occurring during the charged time period.

Hernandez was one of the first defendants in the S1 Indictment to plead guilty, and he will be the first defendant to be sentenced.  The parties agree that Hernandez was not a member of the BTG, nor is Hernandez by any means one of the most culpable defendants in this case.  As noted in the PSR, Hernandez sold marijuana on Heath Avenue, which was a drug-selling block controlled by the BTG during the time period of the charged narcotics conspiracy.  PSR ¶ 48.  Hernandez, who also went by the nickname "Gallo" on the street, received marijuana from Jose Cruz, one of the leaders of the BTG, and was intercepted on wiretap conversations with Cruz discussing marijuana sales in 2011.  Large amounts of marijuana were sold on Heath Avenue; in Hernandez's plea agreement, he stipulated that the conspiracy of which he was a part was responsible for selling between 40 and 60 kilograms of marijuana.  PSR ¶ 8(a).  BTG members stashed firearms in

various locations on Heath Avenue, in order to protect the Gang's exclusive drug-selling territory. PSR ¶ 48.  Critically, Hernandez held several of those firearms (a .380 and a .32 caliber handgun) for BTG members inside his apartment at 3004 Heath Avenue.  Hernandez stipulated to the fact of that possession as part of his plea agreement.  PSR ¶ 8(b).  Hernandez is not charged with participating in any specific acts of violence, although his possession of the abovementioned firearms facilitated acts of violence committed by others.  At trial the Government would have proved that Hernandez brought guns to BTG members that were then used in acts of violence on at least two occasions in 2011.

**B.    Procedural History**

On December 5, 2011, a grand jury sitting in this District returned Indictment S1 11 Cr. 1032 against Hernandez and 49 other defendants.  The indictment contained four counts. Hernandez was charged in Count Two (conspiracy to distribute, or to possess with intent to distribute, 100 kilograms and more of marijuana, in violation of Title 21, United States Code, Section 846), and Count Three (possession, use, and carrying of firearms in connection with the racketeering conspiracy charged in Count One of the Indictment, in violation of Title 18, United States Code, Sections 924(c)(1)(a)(iii) and 2).  On September 19, 2012, Hernandez entered a plea of guilty to a lesser included offense under Count Two of the Indictment, pursuant to a plea agreement with the Government.  The agreement stipulated that Hernandez could receive a sentence of no greater than 20 years' imprisonment, with a Sentencing Guidelines range of 30-37 months' imprisonment.  PSR ¶¶ 8, 110.

C.    **The Presentence Investigation Report**

On January 4, 2013, the Probation Office issued its initial Presentence Investigation Report in this case.  The PSR concluded that the offense conduct yielded a base offense level of 19, and a Criminal History Category of I, yielding a Guideline range of 30-37 months.  (PSR ¶¶ 70-87, 109). This calculation was consistent with the plea agreement between the parties.   The Probation Office recommended a Guidelines sentence of 30 months' imprisonment, noting that, although Hernandez has potential to lead a law-abiding life when he is released from prison, the fact of his involvement with this dangerous gang, and especially his possession of firearms in connection with that membership, counseled in favor of a Guidelines sentence.   PSR page 28.

D.    **Status of Co-Defendants**

Hernandez is the first defendant to be sentenced in this case.

### III. ARGUMENT

A.    **The Governing Legal Framework**

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the

history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes

of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the

Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing

Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among

defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence

sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and
        to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training,
        medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines

range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines

supports the premise that district courts must begin their analysis with the Guidelines and remain

cognizant of them throughout the sentencing process."  *Gall* v. *United States*, 552 U.S. at 50 n.6.

Their relevance throughout the sentencing process stems in part from the fact that, while the

Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the

Commission as carrying out the same basic § 3553(a) objectives,"  *Rita* v. *United States*, 551 U.S.

338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical

evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S.

at 46; *see also Rita* v. *United States*, 551 U.S. at 349.  To the extent a sentencing court varies from

the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the

justification is sufficiently compelling to support the degree of the variance."  *Gall*, 552 U.S. at 50.

**B.     The Court Should Impose a Guidelines Sentence**

In the present case, a Guidelines sentence is sufficient, but not greater than necessary, to

comply with the purposes of sentencing.  Consideration of several of the Section 3553(a) factors,

in addition to the advisory Guidelines, warrants a Guidelines sentence for Hernandez.  The Section

3553(a) factors most applicable in this case include the nature and circumstances of the offense, the

seriousness of the offense, the need to provide just punishment, the need to promote respect for the

law, and the need to afford adequate deterrence to criminal conduct.

The most significant factor weighing in favor of a Guidelines sentence here is the "nature

and circumstances of the offense," 18 U.S.C. § 3553(a)(1).  As detailed above, the crimes

committed by BTG members and their associates (such as Hernandez), are extremely serious, and

wreaked havoc on a community and its residents for an extended period of time.  Hernandez does

not provide any explanation for his actions in this case, other than noting that he used various

controlled substances starting at age 13.[1]  (Hernandez Sentencing Letter, at 2).  Hernandez, of

course, is not required to explain himself to the Court, and he has accepted responsibility for his

actions.  However, Hernandez already received leniency from the Government in the form of the

plea agreement that was offered in this case, which spared him the mandatory minimum of fifteen

years' imprisonment that he would have faced had he been convicted at trial of the narcotics and

---

[1] Hernandez explained to the Probation Office that he used drugs out of "boredom," because he
was unemployed, and to relieve stress. PSR ¶ 98.

-6-

firearms offenses charged in the Indictment.[2]  Hernandez was offered this agreement because, in the Government's view, Hernandez was significantly less culpable than many other members and associates of the BTG charged in this case.  However, the fact remains that he committed serious crimes, and he should not receive any further benefit than that already given him by virtue of the plea agreement in this case.

A Guidelines sentence will also promote respect for the law, provide general deterrence to others, and hopefully deter Hernandez from further criminal conduct.  18 U.S.C. § 3553(a)(2).  While Hernandez does not have a criminal record, he was arrested in September 2011 for possession of a gravity knife at Albany Crescent and Heath Avenue – the heart of BTG territory – and never returned to court after him initial arrest; a bench warrant remains open as a result.  PSR ¶¶ 86-87.  It is encouraging that Hernandez plans not to return to the Bronx neighborhood where the crimes in this case occurred after his release from incarceration.  (Hernandez Sentencing Letter, at 2.)  However, he was unable to secure employment during his period of release on bail in this case.  PSR ¶ 103.  His ability to lead a law-abiding life in the future remains uncertain.  A period of incarceration before his return to society will ensure that Hernandez is aware of the serious consequences of his actions, and will think twice before committing crimes again.

Finally, it also bears noting that a Guidelines sentence in this case would not create "unwarranted disparities among defendants."  18 U.S.C. § 3553(a)(6).  Because Hernandez is the first defendant to be sentenced in this case, the Court is essentially starting with a clean slate.

---

[2] The PSR erroneously notes that the defendant would have faced only a 60-month sentence. PSR ¶ 110.  Count Two as charged carries a five year-mandatory minimum, and Count Three carries a ten-year mandatory minimum, which runs consecutively to any other sentence imposed. *See* 18 U.S.C. § 924(c)(1)(A)(iii).

**IV. CONCLUSION**

For the reasons set forth above, the Government respectfully submits that the Court should impose a Guidelines sentence of between 30 and 37 months' imprisonment.

Dated:         New York, New York
               January 11, 2013

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York

                          By:    ____s/_____
                                 Nola B. Heller / Jessica Ortiz /
                                 Rachel Maimin / Sarah Krissoff
                                 Assistant United States Attorneys
                                 (212) 637-2200

**<u>Certificate of Service</u>**

I, Nola B. Heller, declare that I am employed in the Office of the United States Attorney for

the Southern District of New York, and on January 11, 2013, I caused a copy of the attached

Sentencing Memorandum of the United States of America to be served by electronic notification to

the following counsel:

> Frank Handelman, Esq.
> 325 Broadway, Suite 201
> New York, New York 10007

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28

U.S.C. Section 1746.


Dated:        New York, New York
              January 11, 2013


                                        ____/s_____
                                        Nola B. Heller
                                        Assistant United States Attorney
                                        (212) 637-2631