```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

   UNITED STATES OF AMERICA          :

          -v.-                       :
                                              S1 11 Cr. 1032 (PAE)
   EDUARDO HOLGUIN,                  :

               Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

          PREET BHARARA
          *United States Attorney*
          *Southern District of New York*
          *Attorney for the United States*
          *of America*

NOLA B. HELLER
JESSICA ORTIZ
RACHEL MAIMIN
SARAH KRISSOFF
Assistant United States Attorneys,
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v.- | : |
| | S1 11 Cr. 1032 (PAE) |
| EDUARDO HOLGUIN, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

**I. PRELIMINARY STATEMENT**

The Government respectfully submits this sentencing memorandum in advance of the sentencing of defendant Eduardo Holguin, which is scheduled for January 31, 2013, and in response to the defendant's sentencing memorandum dated January 17, 2013 ("Def. Mem."). The Government respectfully requests that the Court sentence the defendant to a term of imprisonment within the United States Sentencing Guidelines range of 27 to 33 months. Such a sentence would be sufficient, but not greater than necessary, to achieve the statutory goals of sentencing.

**II. BACKGROUND**

A.  **The Offense Conduct**

As described in the pre-sentence investigation report ("PSR") dated January 17, 2013, the S1 Indictment in this case charged fifty members and associates of the Bronx Trinitarios Gang ("BTG") with participation in racketeering, narcotics, and firearms offenses between in or about 2003 and in or about December 2011. The PSR articulates in detail the operations of the Trinitarios Gang ("Trinitarios" or "Gang"), from its formation in the New York state prison system

to the functioning of the BTG on the streets of the Bronx.  (PSR ¶¶ 43-48.)  As noted in the PSR's recommendation, the BTG "flooded the local community with drugs through high volume, street level drug sales; dominated the local drug trade and protected [its] drug-dealing locations through acts of violence (appearing, at times, to relish opportunities to engage in violent behavior); and possessed and used firearms and other weapons in the course of their drug distribution."  (PSR page 30.)  The PSR concisely summarizes the destruction wrought by the BTG and its associates during the extended time period of the charged crimes.  BTG members and associates terrorized the northwest Bronx on a daily basis by selling drugs in an open-air market, possessing firearms and other weapons, and committing frequent stabbings and shootings of rival gang members and drug dealers using those weapons.  As is now charged in the S4 Indictment in this case, BTG members are responsible for at least nine homicides occurring during the charged time period.

   This defendant was a member of the BTG, and sold marijuana on Heath Avenue, which was a core block for the BTG's narcotics trafficking.  (PSR ¶ 51.)  The defendant was also involved in selling guns for the BTG, as reflected in his participation in sales of firearms to undercover detectives during the course of this investigation.  (PSR ¶ 51.)  For instance, on May 10, 2011, the defendant participated in the sale of a Mac-10 firearm that was painted green, (PSR ¶ 51), which was the signature color of the Trinitarios (the "May 10 Sale").  As detailed below, wire interceptions reflect that the defendant coordinated the May 10 Sale with his co-defendant, Jose Cruz.  Similarly, at Cruz's direction, the defendant acted as a lookout during a sale of an AK-47 rifle to a detective on May 17, 2011.  (PSR ¶ 51.)

### B. Procedural History

On December 5, 2011, a grand jury sitting in this District returned Indictment S1 11 Cr. 1032 against the defendant and 49 others. The indictment contained four counts. The defendant was charged in Count One (racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d); Count Two (conspiracy to distribute, or to possess with intent to distribute controlled substances, including, among other things, 100 kilograms and more of marijuana, in violation of Title 21, United States Code, Section 846), Count Three (possession, use, and carrying of firearms in connection with the racketeering conspiracy charged in Count One of the Indictment, in violation of Title 18, United States Code, Sections 924(c)(1)(a)(iii) and 2), and Count Four (firearms trafficking, in violation of Title 18, United States Code, Section 922(a)(1)(A)). On October 3, 2012, the defendant entered a plea of guilty to Counts One, Two, and Four of the Indictment, pursuant to a plea agreement with the Government. The agreement stipulated that the offenses involved at least 20 kilograms but less than 40 kilograms of marijuana, and between 3 and 8 guns, and that the applicable Sentencing Guidelines Range is 27 to 33 months' imprisonment. PSR ¶ 11.

### C. The Presentence Investigation Report

The Probation Office issued its Presentence Investigation Report in this case on January 17, 2013. The Probation Office concluded in the PSR, consistent with the plea agreement, that the offense conduct yielded a base offense level of 18, and a Criminal History Category of I, which results in a Guideline range of 27 to 33 months. (PSR ¶ 135.) The Probation Office recommended a Guidelines sentence of 27 months' imprisonment and a 3 year term of supervised release, despite the defendant's close family ties and youth, emphasizing that the defendant's activities with drugs,

guns, and gangs represent "some of the most harmful conduct plaguing communities today." PSR page 25.

The defendant has raised three comments and/or objections to the PSR. The Government does not object to the defendant's clarifications concerning his prior criminal history (Def. Mem. at 2 (referring to PSR ¶ 112)), and his psychiatric status (Def. Mem. at 2 (referring to PSR ¶ 123)). The Government also does not object to the defendant's characterization of the telephone call described at paragraph 51 of the PSR between the defendant and Mark Martinez, who is also charged in this case, concerning the May 10 Sale, during which Martinez initially mistakes the defendant for Cruz. (See Def. Mem at 1 (referring to PSR ¶ 51).)  The Government notes, however, that several calls surrounding this call make clear that the defendant was involved in coordinating the May 10 Sale with Cruz, by passing information concerning the sale to Cruz and keeping Cruz up to date on developments in connection with the sale.

**D.      Status of Co-Defendants**

Holguin is scheduled to be the fifth defendant to be sentenced in this case. Co-defendant Joseph Hernandez, who pleaded guilty to Count Two of the Indictment, was sentenced on January 18, 2013, principally, to 30 months' imprisonment. Dave McPherson, who pleaded guilty to Counts Two and Four of the Indictment, and Greydin Liz Castillo, who pleaded guilty to Count Two of the Indictment, are scheduled to be sentenced on January 28, 2013. Edgardo Ponce, who pleaded guilty to Count One of the Indictment, is scheduled to be sentenced on January 30, 2012.

### III. ARGUMENT

A.  **The Governing Legal Framework**

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

  (C)  to protect the public from further crimes of the defendant; and

  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

  Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita* v. *United States*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

 **B.** **The Court Should Impose a Guidelines Sentence**

  Here, a sentence within the applicable Guidelines range of 27 to 33 months' imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of the offense, provide just punishment, and provide adequate deterrence to criminal conduct.

  This defendant was a member of the Gang, which was an extremely dangerous and violent criminal enterprise, and he played an important role by selling marijuana on one of the Gang's

most important blocks.  Perhaps even more critically, the defendant participated in the Gang's firearms trafficking.  Illegal gun possession and gun violence pose an extremely serious danger to the community.  Here, in particular, the defendant was involved in the sale of especially lethal guns, including an AK-47 assault rifle.  A sentence within the Guidelines range is necessary not only to reflect the seriousness of this offense, but to deter others from engaging in similar conduct.

## IV.  CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should impose a Guidelines sentence of between 27 and 33 months' imprisonment.

Dated:  New York, New York
January 24, 2013

> Respectfully submitted,
>
> PREET BHARARA
> United States Attorney
> Southern District of New York
>
> By: ____s/_____
> Nola Heller / Jessica Ortiz /
> Rachel Maimin / Sarah Krissoff
> Assistant United States Attorneys
> (212) 637-2200