UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v.- | : |
| CARLOS RODRIGUEZ, | : |
| Defendant. | : |

S1 11 Cr. 1032 (PAE)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

PREET BHARARA
*United States Attorney*
*Southern District of New York*
*Attorney for the United States*
*of America*

NOLA B. HELLER
JESSICA ORTIZ
RACHEL MAIMIN
SARAH KRISSOFF
Assistant United States Attorneys,
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v.- | : |
| | S1 11 Cr. 1032 (PAE) |
| CARLOS RODRIGUEZ, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

**I. PRELIMINARY STATEMENT**

The United States of America, through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this sentencing memorandum in advance of the sentencing of defendant Carlos Rodriguez ("Rodriguez"), which is scheduled for February 1, 2013, at 11:30 a.m. The Government respectfully requests that the Court sentence Hernandez to a Guidelines sentence of between 27 and 33 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to account for the factors set forth at Title 18, United States Code, Section 3553(a).

**II. BACKGROUND**

**A.     The Offense Conduct**

As described in the pre-sentence investigation report ("PSR") dated January 18, 2013, the S1 Indictment in this case charged fifty members and associates of the Bronx Trinitarios Gang ("BTG") with participation in racketeering, narcotics, and firearms offenses between in or about 2003 and in or about December 2011. The PSR articulates in detail the operations of the

Trinitarios Gang, from its formation in the New York state prison system to the functioning of the BTG on the streets of the Bronx. PSR ¶¶ 45-49. As noted in the PSR's recommendation, the BTG "flooded the local community with drugs through high volume, street level drug sales; dominated the local drug trade and protected [its] drug-dealing locations through acts of violence (appearing, at times, to relish opportunities to engaged in violent behavior); and possessed and used firearms and other weapons to engage in violent behavior." PSR page 30-31. The PSR concisely summarizes the destruction wrought by the BTG and its associates during the extended time period of the charged crimes. BTG members and associates terrorized the northwest Bronx on a daily basis by selling drugs in an open-air market, possessing firearms and other weapons, and committing frequent stabbings and shootings of rival gang members and drug dealers using those weapons. As is now charged in the S4 Indictment in this case, BTG members are responsible for at least nine homicides occurring during the charged time period.

As set forth in the PSR, Carlos Rodriguez was a member of the BTG and a close associate of Richard Gonzalez, who was one of the leaders of the BTG. PSR ¶¶ 47, 51-52. Rodriguez sold drugs – primarily marijuana, but also powder and crack cocaine – for Gonzalez on Gonzalez's drug-selling block in the vicinity of 2810 Bailey Avenue in the Bronx. PSR ¶ 51. During September 2011, an undercover detective purchased $100 worth of marijuana from Rodriguez on two separate occasions. On the second such occasion, the undercover officer asked Rodriguez for cocaine (with the knowledge that cocaine was also being sold on Gonzalez's block), and Rodriguez told the detective that he had just run out of cocaine, but would contact the detective when he received more. Id. The BTG was involved in the sales of large amounts of narcotics; in his plea agreement, Rodriguez stipulated that the conspiracy of which he was a part was responsible for

selling between 20 and 40 kilograms of marijuana. PSR ¶ 12(a). According to the Government's cooperating witnesses, Rodriguez was a recent inductee to the BTG, and was under the supervision of Gonzalez in that capacity. As such, Rodriguez not only sold drugs for Gonzalez, he also participated in two violent incidents with Gonzalez in 2011: (1) a melee between numerous members of the BTG including Gonzalez and Rodriguez, in which BTG members assaulted individuals who had insulted the BTG (Rodriguez's co-defendants Hugo Almonte and Jose Ballenilla were the primary assailants in this conflict); and (2) a large-scale violent conflict with members of the Bloods gang on or about September 10, 2011 in connection with Gonzalez's dispute over drug-selling territory between his operation and that of the Bloods. PSR ¶ 52. In retaliation for the September 10, 2011 conflict, later that day, members of the Bloods went to Heath Avenue and shot a member of the BTG.

**B.     Procedural History**

On December 5, 2011, a grand jury sitting in this District returned Indictment S1 11 Cr. 1032 against Rodriguez and 49 other defendants. The indictment contained four counts. Rodriguez was charged in Count One (racketeering conspiracy); Count Two (conspiracy to distribute, or to possess with intent to distribute, 100 kilograms and more of marijuana, in violation of Title 21, United States Code, Section 846); and Count Three (possession, use, and carrying of firearms in connection with the racketeering conspiracy charged in Count One of the Indictment, in violation of Title 18, United States Code, Sections 924(c)(1)(a)(iii) and 2). On October 1, 2012, Rodriguez entered pleas of guilty to Count One and to a lesser included offense under Count Two of the Indictment, pursuant to a plea agreement with the Government. The agreement stipulated

that Rodriguez was subject to a Sentencing Guidelines range of 27-33 months' imprisonment. PSR ¶ 12.

C.  **The Presentence Investigation Report**

On January 18, 2013, the Probation Office issued its second Presentence Investigation Report in this case.  The PSR concluded that the offense conduct yielded a total offense level of 18, and a Criminal History Category of I, yielding a Guideline range of 27-33 months.  (PSR ¶¶ 82-112).  This calculation was consistent with the plea agreement between the parties.   The Probation Office recommended a Guidelines sentence of 27 months' imprisonment, citing Rodriguez's serious offense conduct and personal circumstances, the latter of which included his lack of employment history, his failure to obtain a high school diploma or GED, and his persistent reliance on the financial support of his family.  PSR page 31.

D.  **Status of Co-Defendants**

Rodriguez will be the seventh defendant to be sentenced in this case.  The Court sentenced Joseph Hernandez to a Guidelines sentence of 30 months' imprisonment on January 18, 2013. Five additional defendants – Dave McPherson, Greydin Liz-Castillo, Edgardo Ponce, Eduardo Holguin, and Jonathan Evangelista – are scheduled to be sentenced between January 28, 2013 and January 31, 2013.

### III.  ARGUMENT

A.  **The Governing Legal Framework**

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in

place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and
>
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain

cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita* v. *United States*, 551 U.S. at 349.  To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

**B.    The Court Should Impose a Guidelines Sentence**

In the present case, a Guidelines sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing.  Consideration of several of the Section 3553(a) factors, in addition to the advisory Guidelines, warrants a Guidelines sentence for Rodriguez.  The Section 3553(a) factors most applicable in this case include the nature and circumstances of the offense, the seriousness of the offense, the need to provide just punishment, the need to promote respect for the law, and the need to afford adequate deterrence to criminal conduct.

The most significant factor weighing in favor of a Guidelines sentence here is the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1).  As detailed above, the crimes committed by BTG members (such as Rodriguez) and their associates, are extremely serious, and wreaked havoc on a community and its residents for an extended period of time.  Rodriguez contributed to the blight on his community not only by selling drugs for Gonzalez, but also by participating in large-scale gang-related conflicts occurring on public streets.  Rodriguez was a new

member of the BTG in 2011, but by his actions, he showed his commitment and dedication to the Gang and its dangerous exploits.  Rodriguez already received leniency from the Government in the form of the plea agreement that was offered in this case, which spared him the mandatory minimum of fifteen years' imprisonment that he would have faced had he been convicted at trial of the narcotics and firearms offenses charged in the Indictment.  Rodriguez was offered this agreement because, in the Government's view, Rodriguez was significantly less culpable than many other members and associates of the BTG charged in this case.  However, the fact remains that he committed serious crimes, and he should not receive any further benefit than that already given him by virtue of the plea agreement in this case.

    A Guidelines sentence will also promote respect for the law, provide general deterrence to others, and hopefully deter Rodriguez from further criminal conduct.  18 U.S.C. § 3553(a)(2). While Rodriguez does not have a significant criminal record, it should be noted that he has little to stabilize him and deter him from further criminal activity after the completion of his sentence in this case.  He dropped out of high school because he "disliked" it (PSR ¶ 129), and has not obtained his GED (PSR ¶ 131).  Although Rodriguez apparently made one attempt to begin training for employment in November 2012, he failed the entry exam for the training class.  PSR ¶ 132.  Rodriguez asserts that he has been employed off the books doing construction work (Rodriguez letter at 2), however that assertion is unverified, and Rodriguez apparently failed to inform the Probation Office of this fact, as it was not included in the PSR.  It appears that Rodriguez has no specific plans for his life following the completion of this case other than the continued reliance on the support of his family – an arrangement which clearly did not deter him from criminal conduct in the past.  Consequently, Rodriguez's ability to lead a law-abiding life in

the future remains uncertain.  A period of incarceration before his return to society will ensure that Rodriguez is aware of the serious consequences of his actions, and will think twice before committing crimes again.

Finally, the extent of Rodriguez's criminal conduct is very similar to that of his co-defendant Joseph Hernandez, whom the Court sentenced to a term of 30 months' imprisonment on January 18, 2013.  Both Hernandez and Rodriguez sold narcotics on BTG-controlled blocks.  While Hernandez did not participate in any of the BTG's violent conflicts, as did Rodriguez, Hernandez did store at least one firearm for the Gang.  Accordingly, Hernandez's and Rodriguez's offense conduct is comparable.  As such, in order to avoid creating "unwarranted disparities among defendants," 18 U.S.C. § 3553(a)(6), it is important that Rodriguez receive a Guidelines sentence that is in line with the sentence received by Hernandez.

### IV.  BAIL STATUS

Rodriguez is currently on pretrial release.  He is not subject to mandatory remand, given that the lesser-included narcotics offense to which Rodriguez pled guilty in Count Two, pursuant to Title 21, United States Code, Section 841(b)(1)(D), has a statutory maximum term of five years' imprisonment.  Count One does not have a mandatory remand provision.  Given the Probation Office's report that Rodriguez has been in compliance with all of the terms and conditions of his pretrial release, the Government has no objection to Rodriguez's continued release on bail until such date as he may be required to surrender to the Bureau of Prisons to begin serving any term of incarceration imposed.

## V. CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should impose a Guidelines sentence of between 27 and 33 months' imprisonment.

Dated: New York, New York
January 25, 2013

>                        Respectfully submitted,
>
>                        PREET BHARARA
>                        United States Attorney
>                        Southern District of New York
>
> By:   ____s/_____
>                        Nola B. Heller / Jessica Ortiz /
>                        Rachel Maimin / Sarah Krissoff
>                        Assistant United States Attorneys
>                        (212) 637-2200

**Certificate of Service**

      I, Nola B. Heller, declare that I am employed in the Office of the United States Attorney for the Southern District of New York, and on January 25, 2013, I caused a copy of the attached Sentencing Memorandum of the United States of America to be served by electronic notification to the following counsel:

>Joel M. Stein, Esq.
>29 Broadway, Suite 2420
>New York, New York 10006

      I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. Section 1746.

Dated:    New York, New York
            January 25, 2013

                                                  ____/s_____
                                                  Nola B. Heller
                                                  Assistant United States Attorney
                                                  (212) 637-2631