UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v.- | : |
| EDGARDO PONCE, | : |
| Defendant. | : |

S1 11 Cr. 1032 (PAE)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


PREET BHARARA
*United States Attorney*
*Southern District of New York*
*Attorney for the United States*
*of America*

NOLA B. HELLER
JESSICA ORTIZ
RACHEL MAIMIN
SARAH KRISSOFF
Assistant United States Attorneys,
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v.- | : |
| | S1 11 Cr. 1032 (PAE) |
| EDGARDO PONCE, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

**I. PRELIMINARY STATEMENT**

The United States of America, through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this sentencing memorandum in advance of the sentencing of defendant Edgardo Ponce ("Ponce"), which is scheduled for January 30, 2013, at 10:00 a.m. The Government respectfully requests that the Court sentence Ponce to a Guidelines sentence of between 21 and 27 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to account for the factors set forth at Title 18, United States Code, Section 3553(a).

**II. BACKGROUND**

**A.  The Offense Conduct**

As described in the pre-sentence investigation report ("PSR") dated January 4, 2013, the S1 Indictment in this case charged fifty members and associates of the Bronx Trinitarios Gang ("BTG") with participation in racketeering, narcotics, and firearms offenses between in or about 2003 and in or about December 2011. The PSR articulates in detail the operations of the

Trinitarios Gang ("Trinitarios" or "Gang"), from its formation in the New York state prison system to the functioning of the BTG on the streets of the Bronx. PSR ¶¶ 42-46. As noted in the PSR's recommendation, the BTG "flooded the local community with drugs through high volume, street level drug sales; dominated the local drug trade and protected [its] drug-dealing locations through acts of violence (appearing, at times, to relish opportunities to engaged in violent behavior); and possessed and used firearms and other weapons to engage in violent behavior." PSR page 28. The PSR concisely summarizes the destruction wrought by the BTG and its associates during the extended time period of the charged crimes. BTG members and associates terrorized the northwest Bronx on a daily basis by selling drugs in an open-air market, possessing firearms and other weapons, and committing frequent stabbings and shootings of rival gang members and drug dealers using those weapons. As is now charged in the S4 Indictment in this case, BTG members are responsible for at least nine homicides occurring during the charged time period.

   Ponce was a loyal member of the BTG. PSR ¶ 48. In a telephone call on April 18, 2011, which was intercepted pursuant to a Title III wiretap, Ponce recited the Gang's motto, "DPL," which stands for Dios, Patria, Libertad and is meant to signal one's membership in and loyalty to the Gang. PSR ¶ 50. Among other things, Ponce participated in the affairs of the BTG by trafficking in marijuana, and has stipulated that this trafficking involved at least 20 kilograms but less than 40 kilograms of marijuana. PSR ¶¶ 11, 48. Ponce, along with several co-defendants, ran the marijuana sales on a BTG-controlled block on Mount Eden Avenue in the Bronx. Ponce and others defended and managed that territory for the BTG. For example, in several intercepted calls on July 19, 2011, Ponce informed co-defendant Jose Cruz that there were problems on Mount Den, because a package of narcotics had been lost. Ponce had picked up the package and a dispute had

arisen over whether it should be returned to its rightful owner.  Ponce informed Cruz in the call that he was going to "give...problems" to the owner of the package.  PSR ¶ 48.

Other calls intercepted during the course of the investigation in this case demonstrate the violent nature of the BTG and Ponce's role in that violence.  On May 8, 2011, Ponce informed Cruz in an intercepted call that a dispute had arisen between his crew and the Trinitarios from W. 170th Street, and that Ponce and his crew planned to "beat up" an individual who was falsely claiming to be a Gang member.  On May 21, 2011, Ponce informed Cruz that the previous day he had almost "hit" someone "with a machete," who owed him $10, but the "guys stepped in" and stopped him.  Cruz replied to Ponce, "The punch is cool, but it's not worth chopping someone with the machete over ten bucks."

### B. Procedural History

On December 5, 2011, a grand jury sitting in this District returned Indictment S1 11 Cr. 1032 against Ponce and 49 other defendants.  The indictment contained four counts.  Ponce was charged in Count One (racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d);  Count Two (conspiracy to distribute, or to possess with intent to distribute controlled substances, including, among other things, 100 kilograms and more of marijuana, in violation of Title 21, United States Code, Section 846), and Count Three (possession, use, and carrying of firearms in connection with the racketeering conspiracy charged in Count One of the Indictment, in violation of Title 18, United States Code, Sections 924(c)(1)(a)(iii) and 2).  On September 25, 2012, Ponce entered a plea of guilty to Count One of the Indictment, pursuant to a plea agreement with the Government.  The agreement stipulated that the offense involved at least

20 kilograms but less than 40 kilograms of marijuana, and that the applicable Sentencing Guidelines Range is 21 to 27 months' imprisonment. PSR ¶ 11.

**C.     The Presentence Investigation Report**

The Probation Office issued its Presentence Investigation Report in this case on January 15, 2013.  The Probation Office concluded in the PSR , consistent with the plea agreement, that the offense conduct yielded a base offense level of 16, and a Criminal History Category of I, yielding a Guideline range of 21-27 months.  (PSR ¶ 105).  The Probation Office recommended a Guidelines sentence of 21 months' imprisonment and a 3 year term of supervised release, noting that Ponce's involvement in the Gang and the seriousness of the offense overall of his involvement with this dangerous gang warranted a Guidelines sentence, even in light of Ponce's "difficult upbringing." PSR page 25.

**D.     Status of Co-Defendants**

Ponce is scheduled to be the fourth defendant to be sentenced in this case.  Co-defendant Joseph Hernandez, who pleaded guilty to Count Two of the Indictment, was sentenced on January 18, 2013, principally, to 30 months' imprisonment.  Dave McPherson, who pleaded guilty to Counts Two and Four of the Indictment, and Greydin Liz Castillo, who pleaded guilty to Count Two of the Indictment, are scheduled to be sentenced on January 28, 2013.  As such, the Government expects that Ponce will be the first defendant to be sentenced who pleaded guilty to Count One, the racketeering conspiracy.

### III. ARGUMENT

A.      **The Governing Legal Framework**

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

      (C)      to protect the public from further crimes of the defendant; and

      (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita* v. *United States*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

B.    **The Court Should Impose a Guidelines Sentence**

Here, a sentence within the applicable Guidelines range of 21 to 27 months' imprisonment is sufficient, but not greater than necessary, to comply with the purposes of sentencing. Such a sentence would take into account the Guidelines and Section 3553(a) factors. In particular, given the nature and circumstances of the offense, the seriousness of the offense, and the need to provide just punishment, to promote respect for the law, and to afford adequate deterrence, a sentence

within the applicable Guidlelines range of 21 to 27 months' imprisonment would be appropriate in this case.

Most significantly, the nature and circumstances of the offense, and the seriousness of the offense, warrant a Guidelines sentence here. This was a very serious offense, and Ponce and his associates harmed others and the community through their actions. In particular, as the above described intercepted calls make clear, Ponce was a committed member of the BTG who was willing to harm others in order to facilitate the affairs of the Gang. Ponce also trafficked in marijuana and served the BTG by defending and managing important drug-selling territory. A sentence between 21 and 27 months' imprisonment would provide just punishment for this serious conduct.

In his sentencing submission, the defendant argues for a non-Guidelines sentence of time served, based on his lack of criminal history, his difficult childhood, and his prior drug use. Ponce Sentencing Submission, at 2-3. Ponce has already received leniency from the Government in the form of the plea agreement in this case, and further leniency is unwarranted. While the defendant does not appear to have any prior criminal convictions, his participation in the affairs of the BTG was not an isolated lapse of judgment. Indeed, Ponce's involved in the BTG lasted from at least in or about 2010 through the time of his arrest in late 2011, and the defendant was also involved in a fight in jail since incarcerated on this case. PSR ¶ 13.

A Guidelines sentence would also promote respect for the law and provide the necessary specific and general deterrence. The need for specific deterrence here is evidenced by the fact that the defendant "has no history of verifiable employment." PSR ¶ 101. A sentence within the applicable Guidelines range will ensure that the defendant and others similarly situated are aware

of the serious consequences of gang activity, and will serve to deter such activity in the future. Finally, it also bears noting that a Guidelines sentence in this case would not create "unwarranted disparities among defendants." 18 U.S.C. § 3553(a)(6).

### IV. CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should impose a Guidelines sentence of between 21 and 27 months' imprisonment.

Dated:     New York, New York
           January 23, 2013

                                          Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York

By:     \_\_\_\_s/_____
           Nola Heller / Jessica Ortiz /
           Rachel Maimin / Sarah Krissoff
           Assistant United States Attorneys
           (212) 637-2200