UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                                                     :
UNITED STATES OF AMERICA                             :
                                                     :
        v.                                           :
                                                     :        Case No. 11-CR-1032-PAE
NELSON JORGE-MARTINEZ,                                :
                                                     :
        Defendant.                                   :
                                                     :
-----------------------------------------------------x


### SENTENCING MEMORANDUM OF NELSON JORGE-MARTINEZ


Evan T. Barr
Alejandro G. Rosenberg
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900

*Counsel for Defendant Nelson Jorge-Martinez*


Dated:  January 31, 2013

## I.      INTRODUCTION

Nelson Jorge-Martinez respectfully submits this memorandum in connection with sentencing in the above-captioned case, currently scheduled for February 13, 2013.  He has pled guilty to a single count of conspiracy to distribute marijuana, in violation of Title 21, United States Code, Section 846.

Nelson regrets the lapse of judgment that led him to commit the instant offense.  Nelson became involved in selling marijuana when he was just 22 years old and going through a difficult period following a devastating injury.  His conduct represents a brief deviation in an otherwise productive and honest life.  Moreover, Nelson has demonstrated a sincere willingness to accept responsibility, most notably by returning from the Boston area in March 2012, where he had re-located prior to the unsealing of these charges, and voluntarily surrendering to the Marshal's Service.  He has been confined at the MCC since then, without incident.

We respectfully submit that given Nelson's personal background, and all of the circumstances surrounding this offense, the Court should sentence Nelson to time served.

## II.     THE OFFENSE CONDUCT

Nelson was charged only in Count Two (Narcotics Trafficking).  He is not alleged to have belonged to the Bronx Trinitarios Gang ("BTG") and has not been charged with committing any act of violence or possessing a weapon of any kind.  It appears that he was included in this Indictment after being heard on a wiretap discussing a marijuana transaction with Jose Cruz. PSR ¶ 40.

During his plea allocution, Nelson admitted that beginning in or about 2010, he agreed with others to sell up to 50 kilograms of marijuana in the Bronx.

### III.     PERSONAL BACKGROUND

Nelson is a hard-working and honest young man.  Despite hardships, he has consistently

sought to improve himself and to be a good influence on those around him.

#### A.     Family and Community

Nelson Rafael Jorge-Martinez was born on November 2, 1988 in the Dominican

Republic.  PSR ¶ 82.  Nelson moved to the Bronx with his father, Nelson Jorge-Collado, in

December 2005, having been sponsored for a green card by his grandparents, Reinaldo Jorge and

Maria Collado.  Nelson's mother still lives in the Dominican Republic with his two younger

brothers.  PSR ¶ 83.  Nelson's father works as a superintendent in Co-op City and at a Pathmark

Supermarket chain.  PSR ¶ 83.

Nelson lived with his grandparents until September 2011, at which point he moved in

with his then girlfriend.  PSR ¶ 88.  In October 2011, Nelson moved to Lynn, Massachusetts and

lived with an aunt there until the time of his voluntary surrender on the instant offense.  *Id.*

Nelson has always tried to be helpful to others in the community.  As Ramon Nunez, a

family friend, recounts:

> I can tell you that I have known young Nelson Martinez since he
> was born.  He was a dynamic, educated young man.  He was fond
> of sports, particularly baseball.  From the time he was a child he
> always liked to help the neighbors; in that regard, he used to help
> me out and furthermore he did so here in New York when he was
> more grown up.  Even though I had children of my own, Nelson
> was more cooperative.  We counted more on him than on my
> eldest son.  He would pick up my wife at the hospital and take her
> to Queens.  He also used to help me here with garbage recycling.
> In my house, he helped me paint the apartment.

*See* Exh. A (Letter of Ramon Nunez).

Nelson's grandfather recalls that Nelson "always behaved very well and was very cooperative with the family.  He used to help me clean the house and do many other things."  *See* Exh. B (Letter of Reinaldo Jorge).  Similarly, his grandmother notes that Nelson

> has always behaved very well towards the people who know him. . . . He has always been very helpful with those who know him.  He used to paint my house, take care of my garbage disposal, accompany me to the hospital for my medical appointments.  He did my food shopping, went to the supermarket, got medications for me at the pharmacies.

 *See* Exh. C (Letter of Maria Collado).

A longtime neighbor was impressed by Nelson's demeanor and his efforts to better himself: "That boy was preparing himself little by little.  He's a good boy."  *See* Exh. D (Letter of Antigua Mota).  She also recalled his gentle and affable demeanor:

> I can confirm that I never saw him going around with groups. Even less being involved in fights.  I saw him going around with his grandparents, both to the supermarket and to the drugstore, to the doctors.  He is a serviceable boy. On two occasions he fixed my bathroom toilet.  He painted my apartment.  I used to see that the neighbors kept him busy and that he helped them out.  A very serviceable person and a respectful person.  I never saw him arguing with anyone.  He respected people, and even animals.

*Id.*

### B.    Education

Nelson graduated from high school in the Dominican Republic.  After moving to New York, Nelson (who has since managed to develop his English-speaking skills) briefly attended John F. Kennedy High School in the Bronx.  PSR ¶ 98.  In 2011 Nelson enrolled at Bronx Community College to pursue x-ray technology training, but he did not complete a degree.  *See* PSR ¶ 96.

### C.    Work History and Personal Setback

Nelson has always sought gainful employment.  From 2007 to 2008, Nelson worked as a shipping clerk for a lipstick manufacturer in New Jersey.  PSR ¶ 106.  Nelson subsequently worked in Pathmark's deli department and as a "heavy lifter" for Pearson Education.  PSR ¶¶ 105, 104.  Nelson obtained a job through Titan Staffing in the shipping department of a cutlery company, and was employed there from June 2010 until September 2010.  PSR ¶ 103.

In September 2010 Nelson fell down a stairway in a subway station and fractured his ankle.  The accident marked an unfortunate turning point.  Nelson was hospitalized and in a cast for a month.  Subsequently, Nelson spent about a year undergoing physical therapy.  PSR ¶¶ 90, 102.  Even now, Nelson still suffers ankle pain, and in fact was wearing a leg brace at the time he surrendered in March 2012.  PSR ¶ 91.

The injury prevented Nelson from resuming work.  He was surviving on disability payments of approximately $800 a month, barely enough to make ends meet.  Moreover, as a result of the lingering pain, Nelson had developed an addiction to Percocet. PSR ¶ 94.  Around this time, Nelson succumbed to the temptation of selling marijuana to make more money.

### D.    Self-Surrender

In October 2011 (several months prior to the unsealing of the Indictment), Nelson decided to move to Lynn, Massachusetts to move in with his aunt and seek a fresh start.  He found out about the warrant for his arrest in a phone call with his father who had been in contact with the Marshal's Service.  Nelson's father told the Marshal's that his son was in the Boston area, was scared and was trying to get money for a lawyer.  Nelson and his father then endeavored to retain an attorney, not realizing that counsel could be appointed free of charge.

On March 5, 2012, although he did not have an affirmative legal duty to do so, Nelson returned to New York to surrender to the authorities.

### E.     Post-Surrender Conduct

Nelson has not had any disciplinary issues at the MCC and has been an active participant in the facility's drug counseling program.  PSR ¶¶ 32, 95.

## IV.    SENTENCING ISSUES

### A.     Presentence Report Findings

We agree with the Probation Office's calculation of the Sentencing Guidelines in this case.  Pursuant to U.S. Sentencing Guidelines Manual § 2D1.1(c)(10) (2012), the base offense level is 20.  PSR ¶ 61.  Three levels are subtracted for the acceptance of responsibility pursuant to § 3E1.1(a) and (b).  Thus, the total offense level is 17.  PSR ¶ 68.  Nelson is in Criminal History Category 1.[1]  PSR ¶ 79.  Based on these calculations, Nelson's stipulated sentencing guidelines range is 24 to 30 months imprisonment.  PSR ¶ 11e.

### B.     Consideration Of The Factors Listed In 18 U.S.C. § 3553(a) Strongly Supports A Time Served Sentence.

After evaluating the Sentencing Guidelines, a sentencing court must consider the remaining Section 3553(a) factors in order to "impose a sentence sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a).  Sentencing courts have the obligation to consider factors that were discouraged under the pre-*Booker* mandatory Guidelines regime, such as the history and characteristics of a defendant, the nature of the

---

[1] Prior to the instant case, Nelson had never been charged with any felonies, and had been convicted of only very minor offenses. Specifically, in or about October 2009, he accidentally triggered a fire alarm while at work in Nassau County, leading to a disorderly conduct charge, for which he received a conditional discharge and a $250 fine.  *See* PSR ¶ 74.  Nelson was also convicted in January 2011 in connection with a trespass for which he also received a conditional discharge.  *See* PSR ¶ 76.  The PSR (¶ 77) reflects an outstanding bench warrant.  According to our client, the bench warrant was issued at the time of the trespass arrest for his failure to pay the $250 fine in Nassau County (he did not have enough money).  According to our client, he has since paid that fine and the bench warrant should be expunged.

offense, the need for deterrence, the likelihood of recidivism, and the public's need for protection.  Sentencing courts are obligated to evaluate these factors in order to determine the appropriate punishment for a particular defendant, thereby "achieving somewhat more individualized justice."  *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005).  Here, we respectfully submit that a "time served" sentence is appropriate under all of the relevant circumstances.

> 1.      History and Characteristics of the Defendant

Under Section 3553(a), the court must consider "the history and characteristics of the defendant" when imposing a sentence.  18 U.S.C. § 3553(a)(1).  This factor permits sentencing courts to consider many aspects of the defendant's life when fashioning a fair and just sentence. Nelson's life story strongly supports a sentence of time served in this case.

First, Nelson has shown integrity and strength of character.  He came to this country with nothing, as a legal immigrant from the Dominican Republic who did not speak any English. Upon his arrival, he immediately set about trying to further his education and obtain gainful employment.  When he learned of the arrest warrant in the instant case, he made the honorable decision to voluntarily surrender to the authorities.

Second, Nelson is a genuinely nice and gentle person.  The letters submitted to the Court by friends and relatives reflect his generosity and kindness, notwithstanding the fact that he is a young man of very humble means.

Third, Nelson endured hardships which contributed to his committing the instant offense. He suffered a devastating injury which cost him the ability to work and led in turn to an addiction to painkillers.  Had the accident never happened, Nelson almost surely would not be standing before the Court now awaiting sentencing.

2.      Nature of the Offense

Section 3553(a)(1) requires the Court to consider the "nature and circumstances of the offense" in determining an appropriate sentence.  We submit that the particular circumstances surrounding Nelson's offense clearly call for leniency.

Nelson indisputably played a very minor role in the charges alleged in the Indictment. Nelson was not a member of the BTG, and was never involved in any of their violent crimes.  He is not alleged to have possessed any weapons or injured anyone.  He was, at most, a low level marijuana dealer, and did not significantly profit from the offense conduct.  Under normal circumstances, he would not have been joined with the other defendants but for the fact that he ended up on a wiretap targeting the BTG .

Accordingly, we respectfully submit that given the limited nature of Nelson's involvement, his lack of profit, and his nearly yearlong incarceration, no further jail time is warranted.

3.      Need to Protect the Public

The Court must also weigh the need to "protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C).  We respectfully submit that Nelson does not pose a risk of recidivism.

The conduct at issue represented a deviation from an otherwise law-abiding life of gainful employment.  Aside from two conditional discharges associated with very minor non-felony charges, Nelson has no other criminal history, and no record of violence.  Thus, this factor also weighs heavily in favor of a sentence of time served.

4.      Need for Deterrence

Another factor is the need to "afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B).

Nelson has demonstrated respect for the law based on the fact that he voluntarily surrendered in March 2012.  Since that time, he has been detained almost a year at the MCC without any disciplinary infractions.  He remains hobbled by his ankle injury.  He has learned a painful lesson about the consequences of drug dealing and now will likely face the possibility of deportation.  At this point he simply wants to go home to be with his grandparents in the Bronx and start anew.  Accordingly, imposing further jail time for Nelson is clearly not necessary to achieve any additional deterrent effect.

### 5.   Need to Avoid Sentencing Disparities

Under 18 U.S.C. § 3553(a)(6), courts must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

A sentence of time served would be consistent with the sentence imposed on co-defendant Greydin Liz-Castillo, a similarly situated individual also charged with a single narcotics conspiracy count who was recently sentenced to a year and a day.  Other sentenced defendants are not necessarily in Nelson's position, making comparison difficult.

## V.   CONCLUSION

Nelson's participation in the instant offense represents an isolated episode for an otherwise law-abiding and productive individual.  Nelson's life story is more accurately characterized by his perseverance through hard work, and his demonstrated kindness towards others around him.

Although there is no excuse for marijuana dealing, the Court should keep in mind that Nelson became involved in the instant offense at a time when he had suffered a devastating physical injury which cost him the ability to hold a job.

Perhaps most importantly, when he learned of the warrant for his arrest, he made the right decision to come back to New York and turn himself into the authorities, even though he faced almost certain detention.  This speaks to Nelson's fundamental integrity.

Under all of the circumstances, no useful purpose would be served in requiring Nelson to remain incarcerated any further.  He has learned a lesson, has paid a stiff price and has used his time in jail to overcome his addiction to pain killers.  He is now hopeful to have a chance to resume his life as a productive member of society.  Accordingly, we respectfully request that the Court sentence Nelson Jorge-Martinez to time-served.

Respectfully submitted,

/s/ Evan T. Barr
Evan T. Barr
Alejandro G. Rosenberg
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900

*Counsel for Defendant Nelson Jorge-Martinez*

Dated:  January 31, 2013