**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JOSE GERONIMO-FIGUEROA,<br>Defendant. | CRIMINAL NO. 10-Cr-120 (LMM) |

**SENTENCING MEMORANDUM**

Judith Vargas, Esq.
The Law Offices of Judith Vargas
61 Broadway
Suite 1030
New York, NY 10006
Tel:   (212) 668-0024
Fax:   (212) 668-0060
Email:   judithvargas1@aol.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JOSE GERONIMO-FIGUEROA,<br>Defendant. | CRIMINAL NO. S1 11 CR 1032-33 (PAE) |

**SENTENCING MEMORANDUM**

Hon. PAUL A. ENGELMAYER
United States District Judge
For the Southern District of New York

TO THE HONORABLE COURT:

Mr. Jose Geronimo-Figueroa, represented by the undersigned court appointed counsel, and before this Honorable Court, very respectfully states as follows:

Mr. Geronimo-Figueroa (hereinafter "defendant" or "Mr. Geronimo-Figueroa" or "Geronimo-Figueroa") is scheduled to appear before this Honorable Court for his Sentencing Hearing on March 5, 2013, at 10:00 a.m. Mr. Geronimo-Figueroa respectfully submits the following *Sentencing Memorandum* to provide this Honorable Court with pertinent sentencing related information as per applicable law and in support of a non-Guidelines sentence of time served.

### I. BACKGROUND INFORMATION AND PROCEDURAL HISTORY

Mr. Geronimo-Figueroa was arrested on the underlying indictment on or about December 13, 2011. On that date he was granted bail and placed on home incarceration by

Magistrate Judge Theodore H. Katz.  On December 19, 2011, this Court reviewed said determination and after a hearing continued Mr. Geronimo-Figueroa's bail conditions, with the requirement of an additional surety and the posting of an additional $5,000 cash.  (*See,* Docket Entry, hereinafter "DE," dated 12/19/11).   On March 22, 2012, upon our request, the Court did modify Mr. Geronimo-Figueroa's bail conditions, downgrading his confinement from "home incarceration" to "home detention," in order to allow Mr. Figueroa to seek employment and pursue educational opportunities.   (DE # 213).   Mr. Geronimo-Figueroa has been fully compliant with all of his bail conditions and is adjusting very well at this time, currently attending and excelling at a GED program with *The Fortune Society*.   On October 11, 2012, Mr. Geronimo-Figueroa pled guilty before this Court to Count One of the Indictment, (DE's dated 10/11/12) charging him with Title 18, U.S.C. § 1962(d), conspiracy to participate in a racketeering enterprise.  The statutory penalties for this charge are: a maximum term of life imprisonment, a maximum term of 5 years supervised release, and a fine no greater than $250,000.  The Court allowed Mr. Geronimo-Figueroa to remain on bond on his change of plea date, and he continues to be compliant with all his bail conditions.

A Pre-Sentence Report (hereinafter "PSR") prepared by Mr. Thomas McCarthy of the U.S. Department of Probation was received on or about February 16, 2013.  On January 25, 2013, we filed Objections to the Pre-Sentence Report and on February 9, 2013, we filed Additional Objections to the Pre-Sentence Report.  (*See*, **Exhibit A – *Objections to PSR*** attached).

This *Memorandum* is being filed pursuant to 18 U.S.C. § 3553(a) and the holdings in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), and its progeny.  In this *Memorandum* we respectfully urge this Honorable Court to consider the § 3553(a) factors,

specifically defendant's prior history, characteristics, background, family ties, and sentence defendant to a non-Guidelines sentence of time served.

## II. FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE [18 U.S.C. § 3553(a)]:

Booker requires a sentencing court to consider numerous factors enumerated in 18 U.S.C. § 3553(a). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall v. United States, 552 U.S. 38, 49-50 (2007). Among those factors is the sentencing range established by the Guidelines, which the judge must usually assess. However, if an assessment is made it must be an individualized one; and, further, the court "may not presume that the Guidelines range is reasonable." Gall, 552 U.S. at 39. After considering the Guidelines and all the other § 3553(a) factors, the sentencing judge should decide whether to impose a Guidelines sentence or a non-Guidelines sentence. United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005). In considering the § 3553(a) factors, the Supreme Court has made it clear that the Guidelines range is not entitled to greater weight than the other § 3553(a) factors. Gall, 552 U.S. 38; Kimbrough v. United States, 552 U.S. 85 (2007). In both cases substantially lower sentences than what the Guidelines recommended were upheld.[1] Further, an exception to the rule that the applicable sentencing range must be calculated is where the sentencing judge, after considering all the § 3553(a) factors decides to impose a non-Guidelines sentence regardless of which range applies. Crosby, 397 F.3d at 112. We submit that in this case this Court is free to impose a

---

1 In Gall, a defendant whose Guidelines range was 30-37 months was sentenced to probation, Gall, 552 U.S. at 49, and in Kimbrough the court applied a downward variance in a crack cocaine case where it disagreed with the Guidelines. Kimbrough, 552 U.S. at 111. Both cases were upheld by the Supreme Court. Id.

non-Guidelines sentence, and respectfully urge the Court to impose the requested sentence of time served based upon several of the § 3553(a) factors which we discuss below.

History and Characteristics of the Defendant

*Family Ties*

Mr. Jose Geronimo-Figueroa was born on March 23, 1989, in Santo Domingo, Dominican Republic. He is the 23 year old son of Ms. Daisy Figueroa and Mr. Abelo Geronimo. He lived in Santo Domingo with his mother until about the age of 7, when she was forced to leave him behind in order to travel to the United States to find work. He then lived with his Grandmother, Ms. Luz Maria Bolquez, in Santo Domingo, while his mother lived and worked in the United States in order to financially support Mr. Geronimo-Figueroa in the Dominican Republic. Mr. Geronimo-Figueroa did not see his mother for 3 years, until the age of 10, which is when his mother brought him to the United States and when he became a United States Citizen. His mother raised him on her own as a single parent. Mr. Figueroa went to school in the United States, completing up to the 11th grade at Stevenson High School in the Bronx in New York City.

Mr. Geronimo-Figueroa enjoys a wonderfully solid bond with his mother, with whom he still lives, calling her his best friend. Ms. Figueroa is fiercely supportive of her son. She has attended each court appearance and stays in constant contact with the undersigned, keeping the undersigned informed of her son's constant progress. Mr. Geronimo-Figueroa also enjoys a close relationship with his father, who currently resides in the Dominican Republic, although his parents separated when Mr. Figueroa was a very young boy. Mr. Geronimo-Figueroa has always remained in close contact with his father.

Mr. Geronimo-Figueroa has a 5 year old son, Jayden, whom he fathered with Ms. Geraldine Alejo. He has been in a solid, loving relationship with Ms. Alejo for more than 6 years

and continues to receive her unequivocal support. She states that Mr. Figueroa is a very good and loving father to their son.

*Achievement Skills and Certificates*

Mr. Geronimo-Figueroa did not complete his primary education, however he has always desired to learn, to complete his studies and to obtain marketable skills for employment. While still in high school Mr. Geronimo-Figueroa enrolled himself in several security guard trainings, where he obtained at least 2 certificates in security guard training. We have attached these and other certificates for the Court's review in **Exhibit B –** *Certificates of Achievement.* Mr. Geronimo-Figueroa then went on to work in the security field, however he was forced to leave his security job after only a few months in 2007 since his grueling midnight shift began interfering with his high school studies. In 2009, he enrolled himself in a pre-college program at Professional Business College, where he obtained some credits towards his GED. In June, 2012, while on bail on the instant case, Mr. Geronimo-Figueroa successfully completed an Adult Literacy Initiative Program sponsored by the Department of Youth and Community Development (a*lso attached as part of* **Exhibit B**). He also successfully completed and received a Certificate of Achievement for a program called the *Strong Fathers, Stronger Families*, a parenting program in the Bronx, New York. (*Id.)* Recently Mr. Geronimo-Figueroa applied and was accepted into a challenging pre-GED course offered by *The Fortune Society*, and is doing exceptionally well. We have attached a glowing letter of his progress written by Mr. John Kefalas, the Coordinator of Youth Programs at *The Fortune Society*. In his letter Mr. Kefalas praises Mr. Geronimo-Figueroa's work: "Jose is a bright, personable and very responsible young man who is a role model not only in the class but in our entire program." (*See letter from Mr Kefalas attached as part of* **Exhibit C – Letters of Recommendation**).

*Employment*

Having been raised by a very hard working single mother – Ms. Figueroa currently works more than 40 hours per week as a Home Health Attendant and has been employed as such for more than 13 years, Mr. Geronimo-Figueroa understands, respects and has tried to emulate his mother's work ethic.  Accordingly he has always has always tried to maintain employment in order to assist his hardworking mother.  Below is listing of his work history:

| | |
|---|---|
| 2006-2007 | Apple Cleaner Services (window cleaner) (age 16) |
| 2007 | Murdoch Security (age 16) |
| 2008 | McDonalds Restaurant (age 17) |
| 2008-2009 | Apple Cleaner Services (window cleaner) (age 18) |
| 2009-2010 | UPS (Delivery Driver's Helper) (age 19) |
| 2010-2011 | Gourmet Guru (Warehouse Truck Loader) (age 20) |

.
Although he has always wanted to and still greatly desires to work, maintaining work has now proven exceedingly difficult since the time of his arrest, since the employers with whom he has applied for work have refused to hire him due to his current status under home detention, and because of his electronic monitoring bracelet.  This has been an extreme source of frustration for Mr. Geronimo-Figueroa who must now regrettably live off his mother's small income.  This has caused Mr. Geronimo-Figueroa incredible stress, as it pains him to see his mother have to work so hard and for such long hours – she sometimes arrives home at midnight – in order to support the family.[2]  Mr. Geronimo-Figueroa greatly desires to be able to obtain an education in order to obtain meaningful employment so that he can help his mother financially and so that she will not have to work as hard as she currently does.

---

2  Mr. Geronimo-Figueroa has a 14 year old brother, Ricardo, whom also lives with Mr. Figueroa and his mother.

<u>Mr. Geronimo-Figueroa's Involvement in the Offense was in 2005</u>

One of the factors the Court should consider in sentencing Mr. Geronimo-Figueroa is the timing of his involvement in this offense. In this case Mr. Geronimo-Figueroa's involvement was as long ago as 2005, more than 8 years ago when Mr. Figueroa was barely 15 years old. Mr. Geronimo-Figueroa admits it was a difficult time for him. He began experimenting with drugs, such as marijuana, at that young age. His drug use caused him problems, including at school, where he began getting into fights and then later was suspended for one year.[3] One of those fights is referenced in the government's documents. Mr. Figueroa explains that this fight was a result of the robbery of one of his friends by gang members. Mr. Figueroa regrettably became involved in defending that friend. There were others also involved in that conduct, at least 4 of which are also named in the instant indictment. After that incident, Mr. Figueroa distanced himself from all of those individuals and has not engaged in any criminal conduct.[4] He notes that once he stopped associating with these individuals he regained control of his life and began exercising better judgment. It was then when he began enrolling in other courses, such as the security guard trainings, and when he began seeking employment. Shortly thereafter he also fathered his son, Jayden. It was at that moment that he realized that he had to stay out of trouble for the sake of his newborn son. He was able to stay out of trouble during those years, focusing on working so he could provide for his son, his son's mother and his own mother. This is evidenced in work history which reflects a series of jobs that he held from the age of 16 on. What is also evident from this is that the conduct of which Mr. Geronimo-Figueroa is accused is

---

[3] After the suspension he never returned to the High School, deciding instead to work.

[4] Mr. Geronimo-Figueroa's contacts with the Criminal Justice System do include two arrests from 2009, both for Disorderly Conduct, a violation and not a crime. Notably in both cases Mr. Figueroa was arrested not for engaging in criminal conduct but for preventing police from arresting another individual and then preventing police from arresting him. PSR ¶¶ 85-88.

an unfortunate blemish and an aberration in his otherwise hardworking life. In the 8 years since that conduct, Mr. Geronimo-Figueroa has steered clear of the individuals with whom he once associated and, with the exception of the two arrests for Disorderly Conduct in 2009 referenced in footnote 4 above, has not had any contact with the criminal justice system. Also, in addition to his work ethic, and the steps he is taking to educate himself, Mr. Figueroa has taken to volunteering his services at *The Fortune Society*, volunteering his time daily from 2-4 pm in a project for the class he is taking with Ms. Ruthie Arroyo. (*See, letter from John* Kefalas at **Exhibit C).** Clearly Mr. Geronimo-Figueroa is fostering positivity and growth within himself, as well as sharing that growth with his community -- examples of Mr. Geronimo-Figueroa's ongoing and future good conduct and rehabilitation since 2005.

It is also important to underscore, that with respect to his involvement in this offense, Mr. Geronimo-Figueroa was not a main player in this scheme. He was not an "organizer" or "leader." In the criminal world, "Organizers" and "leaders" exercise a significant degree of control and decision making authority over the criminal activity. To be a manager or supervisor, the defendant must have exercised "some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime." United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990); *see also* United States v. Hertular, 562 F.3d 433, 448 (2d Cir. 2009) *(*"A defendant is properly considered as a manager or supervisor . . . if he 'exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or supervise lower-level participants.'"); United States v. Chau, 293 F.3d 96, 103 (3d Cir. 2002) ("[A] manager or supervisor is one who exercises some degree of control over others involved in the offense." (internal quotations and alterations omitted)).

Applying these standards here, Mr. Geronimo-Figueroa did not concoct or create the scheme in this case, he did not exercise control and decision making authority over the criminal activities in this racketeering conspiracy, he did not profit from any of the co-conspirator's conduct in this conspiracy, he did not recruit others, nor was he responsible for the control of the any of the co-defendants involved. Mr. Geronimo-Figueroa's involvement therefore, was as limited as it was remote in time, having occurred nearly 8 years ago, and we ask ). Thus, for all of these reasons, and further, as there is no mandatory minimum sentence required in this case, we respectfully request that the Court sentence Mr. Geronimo-Figueroa to a term of time served.

<u>The Need for the Sentence to Reflect the Seriousness of the Offense</u>

Mr. Geronimo-Figueroa is charged with conspiracy to engage in racketeering. Mr. Geronimo-Figueroa has never minimized the seriousness of this offense, and has always acknowledged his responsibility. However, as mentioned above, Mr. Geronimo-Figueroa's involvement was as remote in time as it was limited. He was not the ringleader of this offense. He did not orchestrate this crime, he did not recruit followers, nor did he profit in any way from this conspiracy, as is reflected by his modest and humble upbringing and home. He acknowledges his participation, again, albeit remote and limited, and he is remorseful. Mr. Geronimo-Figueroa has been under house arrest and home detention since December 2011, nearly 14 months. We respectfully submit that this period has proven to be an extreme punishment for Mr. Geronimo-Figueroa – he has been unable to provide for his family – a painfully frustrating situation for him. This period of home confinement, in light of his limited and remote involvement, we submit, reflects the seriousness of this offense and more than adequately complies with the requirements of 18 U.S.C. Sec. 3553(a)(2).

<u>The Sentence Promotes Respect for the Law, Provides Just Punishment for the Offense, Affords Adequate Deterrence to Criminal Activity, Protects the Public From Further Crimes and Will Allow Mr. Geronimo-Figueroa to Participate in Future Employment Endeavors</u>

As mentioned above, Mr. Geronimo-Figueroa has served nearly 14 months of home incarceration/detention. This period has not been insignificant; it adequately reflects the seriousness of the offense as well as serving to promote respect for the law, considering his involvement was so many years ago at the very young age of 15. Mr. Geronimo-Figueroa is still young, now only 23 years old and he has been desperately trying to rectify his life. The period of home incarceration that Mr. Geronimo-Figueroa has served has and will continue to serve as an absolute deterrent to any possible criminal conduct by Mr. Geronimo-Figueroa in the future. As mentioned above, Mr. Geronimo-Figueroa greatly desires to work and to go to school and has been making impressive strides in that area. We submit that any further term of incarceration imposed upon him will hinder any progress he has made thus far. A sentence of time served, however, will allow Mr. Geronimo-Figueroa to continue in his progress, to continue to grow, to continue his studies, to seek employment so that he can meaningfully contribute to the care of his young son, his son's mother, his own mother and his younger brother. It will allow him to reintegrate into society as a productive and valuable member. A sentence of time served will afford Mr. Geronimo-Figueroa the opportunity to continue his life as a once law abiding member of society.

<u>The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who Have Been Found Guilty of Similar Conduct</u>

Under this §3553(a) factor, the Court should consider sentences among co-defendants, as well as sentences between defendant and others who have been charged similarly. Mr. Geronimo-Figueroa requests that the Court consider the information previously presented to

ensure that defendant is sentenced in a manner which takes into account the particular circumstances of his case to ensure that the total punishment he receives is similar to that of similarly situated defendants, taking into account defendant's background and circumstances.

### III. CONCLUSION AND REQUESTS

Even when the Sentencing Guidelines were mandatory, sentencing courts were to treat those before them as individuals. *See* Koon v. United States, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). The decision in Booker and the command of the statute to impose a sentence that is "sufficient, but not greater than necessary," has given sentencing courts greater latitude to impose a sentence that fits the crime and the person before the court. Mr. Geronimo-Figueroa, therefore, respectfully requests this Court to exercise that discretion and to sentence him to a lenient sentence reflective of his youth, his background, history and circumstances and to sentence him to time served.

WHEREFORE, it is respectfully requested that the Court take note of all of the information provided herein, and sentence defendant accordingly.

RESPECTFULLY SUBMITTED.

In New York, New York, this 11th day of February, 2013.

*s/Judith Vargas*
Judith Vargas, Esq.
*The Law Offices of Judith Vargas*
*61 Broadway, Suite 1030*
*New York, NY 10006*
*Tel: (212) 668-0024*
*Fax: (212) 668-0060*
Email:   judithvargas1@aol.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this date, I filed the foregoing electronically via ECF to the Hon. Paul A. Engelmayer, U.S. District Judge and to U.S. Attorney Preet Bharara,   Att: AUSA Nola Heller.

                                        *s/ Judith Vargas*
                                        Judith Vargas, Esq.