**Henry J. Steinglass**
**Attorney at Law**
**299 Broadway, Suite 1802**
**New York, New York 10007**
hjsteinglasslaw@earthlink.net

tel. (212) 406-7700                            fax (212) 406-7702

March 18, 2013

Hon. Paul E. Engelmayer, U.S.D.J.
United States Courthouse
500 Pearl St.
New York NY 10007

re: United States v. Sierra et al., 11 CR 1032 (PAE)–Luis Cabrera-Recio (Defendant #27)--
     Sentencing Scheduled for 3/21/13

Dear Judge Engelmayer:

     This letter is submitted on behalf of my client, Luis Cabrera-Recio ("Recio"), in reply to the prosecution's Sentencing Memorandum which I received on 3/14/13. Without diminishing in any way Mr. Recio's acceptance of responsibility, this letter address certain statements in the prosecution's papers regarding Mr. Recio's offense conduct.

<u>Mr. Recio Did Not Engage in Narcotics Trafficking (Other than Marijuana)</u>

     Mr Recio denies the prosecution's allegation that his activities with the Bronx Trinitarios Gang ("BTG") included participation in "selling ... heroin, prescription pills and other narcotics" (besides marijuana) (Govt. Memo p.2).

     Contrary to the prosecution's statement, Mr. Recio did <u>not</u> stipulate to "participating in the affairs of the BTG by trafficking in narcotics" (Govt. Memo. p.2). Rather, the stipulation in the plea agreement is to a base offense level of 20 because the offense involved "at least 40 but less than 60 kilograms of marijuana" (Plea Agreement, quoted in PSR, pg. 7).[1]

     I also note that there is nothing in the recorded conversations or other discovery I reviewed (see below, pg. 3) that indicates that Mr. Recio was involved in selling drugs other than marijuana.

---

[1] The prosecution's reference to 20-40 kilos of marijuana (Govt. Memo. p. 2) is erroneous, as is the reference to a Guideline range of 21-27 months (p. 7).

1

Mr. Recio Did Not Engage in Violence

      Mr. Recio denies the prosecution's claim that there is "at least one 'green light' ...that the defendant was made aware of and was responsible for carrying out along with others." Govt Memo. p. 4 (a "green light" is an "order of violence toward another individual issue by a leader of the gang..." (id.).

      Regarding the prosecution's argument that Mr. Recio was "willing to harm others in order to facilitate the affairs of the Gang" (Govt. Memo. p. 7), I note that since Mr. Recio did not act on what he talked about (see PSR #54), it appears that he was <u>not</u> willing to harm others.[2]

Mr. Recio Did Not Refuse Issi Dominguez' Request To Be Taken To A Hospital

      Mr. Recio also denies the prosecution's allegations that (a) Mr. Recio "walked past a dying [Issi] Dominguez" on 11/29/09, and refused Dominguez' request to be taken to a hospital, and (b) told a cooperating witness that he had done so. (Govt. Memo. p. 4).

      I note that surveillance video and police reports in the discovery material, and other information in this case, indicate that, in brief, when this incident started, Mr. Recio was in a car parked opposite 2200 Tiebout Ave in the Bronx. Police cars quickly arrived on Tiebout Ave. (a police station is very close by), police officers examined the car Mr. Recio was in (with a girl), saw them inside, ordered them out of the car, detained them, and searched the car.[3]

      In the surveillance video, about 3 1/2 minutes elapsed from the time people started running (presumably about the time shots were fired and Dominguez was hit) until the end of the video–when Mr. Recio is still with the police at the car.

      Dominguez was found at the southeast corner of East 182nd St and Valentine Ave.–one block east of Tiebout Ave.--and taken to St Barnabas Hospital. The autopsy report states that there was a bullet wound behind his left earlobe (pg. 3).

      Thus, it appears that Mr. Recio was being detained by the police on Tiebout Ave. when Dominguez was found at least a block away and taken to the hospital.

---

      [2]As my 3/8/13 submission should have noted, in the conversations summarized in the Pre-Sentence Report (#54), Mr. Recio did not "threaten" others with violence. These are his recorded his conversations with Cruz.

      [3]The 46th Precinct stationhouse is at 2120 Ryer Ave., one block east of Valentine Ave., just south of 181st St.

There is No Dispute Regarding Mr. Recio Participation in Firearms Trafficking

This offense conduct is set forth at length in my 3/8/13 letter and is also described in the prosecution papers (Govt. Memo pp. 2-3). I respectfully submit that, based on these facts, "go-between" is a more accurate characterization of Mr. Recio's role than "broker" (Govt. Memo p. 3),. In any event, because these is no dispute regarding the factual details, the Court can assess Mr. Recio's role without having to resolve these competing characterizations.[4]

As to Whether Mr. Recio Was An  "Integral" Member of the Gang

I disagree with the prosecution's characterization of Mr. Recio as an "integral" member" of the Bronx Trinitarios Gang ("BTG") (Govt. Memo p.2). That he was a member of the BTG there is no dispute. But, "integral" seems to suggest that he was necessary, central  or a particularly important part of  BTG's activities.[5]

I have reviewed all the discovery material that I could ascertain was pertinent to Mr. Recio. In particular, I reviewed line sheets for recorded calls between Mr. Recio and co-defendant Jose Cruz,  alleged head of the 'Bad Boys", whose calls were recorded pursuant to court-ordered wiretaps.[6] The calls between Mr. Recio and Mr. Cruz took place between early April and late July 2011 (except for one call in November 2011). I did not find anything in these line sheets or in any other discovery material which indicated that Mr. Recio was a particularly important  member of the gang.

Nor is there any indication that  Mr. Recio was a particularly important member from his acting as a "go-between" in the May 2011 firearm transaction,  or his involvement in BTG's trafficking of  marijuana. I also note the following:

> (1) Mr. Recio was one of the younger members (19 years old when arrested on 12/7/11.) as I understand it, Cruz and numerous other gang members were considerably older (in one of the recorded conversations, Cruz talked about how long he had been a leader of the gang); the older members were substantially more important members of the gang than Mr. Recio;

---

[4] As for the prosecution characterization of  my 3/18/13 submission as "an attempt to minimize the defendant's role in firearms trafficking...."(Govt Memo p. 7)--I note that I presented extensive detail on this subject, which the prosecution does not claim was inaccurate.

[5] A dictionary definition of "integral" is: "of or belonging as an essential part of the whole; necessary to completeness; constituent", as in "integral part" (Random House Webster's College Dictionary (2d ed. 1997).

[6] My review included calls indicated by the prosecution--in response to my request for a list of pertinent calls–to be significant calls (although not necessarily all the pertinent calls).

(2) Cruz told Mr. Recio that the Issy Dominguez homicide murder was none of his business (see Govt Memo. p. 4; referring to this recorded call); and

(3) in contrast, Cruz talked with other BTG members about such matters as a murder case against a gang member, attacking a confidential informant, directing hitmen to a location, pulling out guns, and kidnapping.[7]

---

[7] Here are a few examples of Cruz' recorded conversations with other gang members about violence:

1) Cruz "and numerous other of the Target Subjects routinely discuss [Raymond] Sosa and his open murder case in calls intercepted on Target Cellphone #1", including calls taking place on" April 6 and 11, and May 2,3, 6, 17, 18 and 11, 2011 (Supporting Afft., p. 19) (citations in this footnote are to agent affidavits in support of wiretap and/or search warrant applications produced in discovery in this case;

2) on 5/31/11, Cruz told "Benji", "things are so messed up that the other day they were paying 500 to give a guy a kiss and I was going to get involved with that ...in Manhattan.... The guy did not show up." (Supporting Afft., p. 25); the investigating agent believed that (a) Cruz was saying here that he and his associates had been hired to commit an act of violence", and (b) this attempt may be related to a recent disclosure by a New York narcotics prosecutor of the identity of a confidential informant. (id. p. 25 );

3) on 6/26/11, co-Defendant Richard Gonzalez, allegedly the head of the BTG, asked Cruz "to send two people up here" Kingsbridge and Sedgwick Avenues in the Bronx. because of a situation involving "a group of guys" and an impending fight between two groups of women; Cruz than called Co-defendant Hugo Almonte and asked him, "Are you with Romo and the other hitmen, the ones that like to fight?"; Almonte says yes, and Cruz tells him to go to Kingsbridge and Sedgwick about a situation "with a DDP." (Supporting Afft., pp. 24-25) (the prosecution has not claimed that Mr. Recio was one of the "hitmen" Cruz was referring to);

4) on 6/29/11, Richard Gonzalez and Cruz discussed a situation in which, Gonzalez says–referring to a third person--"he never pulled the gun out" Supporting Afft., p. 26);

5) on 7/1/11, Richard Gonzalez told Cruz, "the guy that he pulled it out on, the one he was going to shoot, is with him every day" (Supporting Afft., p 27); and

6) on 7/13/11, Richard Gonzalez told Crus, that a photograph of a possibly kidnapped Brooklyn Trinitarios Gang member 'doesn't have any bruises ...and he is supposedly kidnapped and knocked out." (Supporting Afft., p. 28); Cruz says to Gonzalez, "Why would they ask for $10,000, it's too little" (id.).

4

As to Whether Mr. Recio Had "Frequent" Contact with Jose Cruz

I question the prosecution's characterization of Mr. Recio's contact with Jose Cruz as "frequent." (Govt. Memo p. 20).

The line sheets of recorded calls between Mr. Recio and Cruz that I reviewed (see above) took place over about a four month period (early April to late July 2011). There were roughly 60 calls. This averages about four calls per week. I note that Mr. Recio was not "frequently" in Cruz' presence.

As to Whether Mr. Recio Was Involved in "Virtually All the Aspects of the BTG ..."

I disagree with the prosecution's statement that Mr. Recio was involved in "virtually all the aspects of the BTG ...." (Govt. Memo. p. 20), particularly because he concededly was not involved in the Issi Dominguez homicide (Govt. Memo. p. __) and he has not been charged in any of the other homicides, attempted murders or other violence in this case. (His participation in BTG firearms and drug trafficking was limited, as discussed above and in my 3/8/13 submission).

There Would Be No Unwarranted Disparity in a Below-Guidelines Sentence

The prosecution argues that a Guidelines sentence for Mr. Recio would not create "unwarranted disparities among defendants." (Govt. Memo. p. 9, quoting 18 U.S.C. Sec. 3553(a)(g)). While I do not believe I have enough information to disagree with the prosecution's position, it appears that a below-Guidelines sentence would not create "unwarranted disparities" either.[8]  Of the 13 sentences I have reviewed in this case, two were about 12 months, seven were from 18 to 27 months, three were 30 to 33 months, and one was 41 months, as shown in the Table on the next page.

In broad generalities (for whatever they are worth), this review shows that approximately over two thirds of the sentences were 27 months or less (nine of 13 defendants); the average of these nine sentences was 20 months. The three defendants responsible for the same marijuana weight as Mr. Recio (40-60 kilos) received sentences averaging 22 months: (a) 12 months and a day  for Robles, (b)  24 months for Barcarer–who pleaded guilty to Counts 1 and 2, and (c)  30 months for Hernandez, who possessed a dangerous weapon in connection with his marijuana distribution.

---

[8]I reviewed sentencing memoranda filed by co-defendants and the Government in some of these cases, ECF notices regarding sentences, and the docket sheet. I did not have review Pre-Sentence Reports, plea and sentencing minutes, and other pertinent material. Of course, in this case, as in almost every case, it is very difficult to compare sentences because of differences in the defendant's individual circumstances, and in the scope and details  of the offense conduct.

TABLE

| Defendant | Sentence (in mos.) | Guideline Range (in mos.) | Counts Pleaded Guilty To | Offense Conduct (weight of marijuana, etc. |
|---|---|---|---|---|
| G. Liz-Castillo | 12 + 1 day | | #2 | |
| Christopher Robles | 12 + 1 day | 24-30 | #2 | 40-60 kilos |
| Nelson Jorge-Martinez | 18 | | #2 | |
| Edgardo Ponce | 21 | 21-27 | #1 | 20-40 kilos |
| Vance Hill | 21 | | #2 | 20-40 kilos |
| Jose Barcarer | 24 | | #1,2 | 40-60 kilos |
| David Patino | 24 | | #1,2 | 20-40 kilos; possessed dangerous weapon in connection with his marijuana distribution |
| E. Holguin | 24 | 27-33 | #1,2,4 | |
| Carlos Rodriguez | 27 | 27-33 | #1,2 | 20-40 kilos; aggravated assault on 9/10/11 in which a dangerous weapon was brandished or its use was threatened |
| J. Majdanski | 30 | | #1 | 20-40 kilos |
| Joseph Hernandez | 30 | 30-37 | #2 | 40-60 kilos possessed dangerous weapon in connection with his marijuana distribution |
| Jonathan Evangelista | 33 | 30-37 or 27-33 | #2 | distributed 200-300 grams of cocaine |
| Dave McPherson | 41 | | #2,4 | 10-20 kilos; 3-8 firearms; maintaining premises for manufacturing or distributing a controlled substance |

  Accordingly, it appears that a sentence for Mr. Recio of time served–which would now be equivalent to about18 months less good time–would not create an "unwarranted disparity" with co-defendants.

CONCLUSION

  For the reasons set forth above, and in my 3/8/13 submission, I respectfully submit that a below-Guideline sentence, indeed a sentence of time served, would be "sufficient, but not greater than necessary", to accomplish the purposes set forth in Sec. 3553(a)(2).

              Yours truly,

              s/
              Henry J. Steinglass

P.S. I am submitting family letters separately.


cc: AUSA Jessica Ortiz [via ECF]
   Probation Officer Jemmard Thomas   [via fax (212) 805-0047]