UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v.- | : | |
| | | S5 11 Cr. 1032 (PAE) |
| MIGUEL STRONG, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


PREET BHARARA
*United States Attorney*
*Southern District of New York*
*Attorney for the United States*
*of America*

JESSICA ORTIZ
MICAH SMITH
RACHEL MAIMIN
SARAH KRISSOFF
Assistant United States Attorneys,
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

       -v.-                              :

                                                   S5 11 Cr. 1032 (PAE)

MIGUEL STRONG,                    :

             Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

### I. PRELIMINARY STATEMENT

The United States of America, through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this sentencing memorandum in advance of the sentencing of defendant Miguel Strong (the "defendant"), which is scheduled for February 3, 2015. The Government respectfully submits that a sentence within the Guidelines Range stipulated to in the plea agreement – 210 to 262 months' imprisonment – would be sufficient, but not greater than necessary, to account for the factors set forth at Title 18, United States Code, Section 3553(a).

### II. BACKGROUND

**A.       The Offense Conduct**

As described in the pre-sentence investigation report ("PSR") prepared in connection with the defendant's sentencing, the S1 Indictment in this case charged fifty members and associates of the Bronx Trinitarios Gang ("BTG") with participation in racketeering, narcotics, and firearms offenses between in or about 2003 and in or about December 2011.   The PSR articulates in detail

the operations of the Trinitarios Gang ("Trinitarios" or "Gang"), from its formation in the New York state prison system to the functioning of the BTG on the streets of the Bronx.   The PSR concisely summarizes the destruction wrought by the BTG and its associates during the extended time period of the charged crimes.   BTG members and associates terrorized the northwest Bronx on a daily basis by selling drugs in an open-air market, possessing firearms and other weapons, and committing frequent stabbings and shootings of rival gang members and drug dealers using those weapons.   As charged in the S5 Indictment in this case, BTG members are responsible for at least nine homicides occurring during the charged time period, including the murder of David Avila-Gomez during a botched robbery which the defendant agreed to participate in.

The defendant was a member of the Trinitarios for many years; specifically, he was a member of the Bad Boys faction.   While Strong was a member of the Trinitarios, his most serious conduct involved several robberies with other members of the Trinitarios, including Felix Lopez-Cabrera.   The defendant was the driver during one attempted robbery, where other co-conspirators killed David Avila-Gomez during the court of the attempted robbery.    As the Court may recall, during the trial of Lopez-Cabrera, several cooperating witnesses discussed the defendant's role as the driver during the murder of Avila-Gomez and other robberies conducted by members of the Trinitarios.

### B.    Procedural History

On December 5, 2011, a grand jury sitting in this District returned Indictment S1 11 Cr. 1032 against 50 members of the Trinitarios.   Subsequently, in December 2012, the grand jury returned a fifth superseding indictment (the "S5 Indictment").   The defendant was charged in the S5 Indictment with Substantive Racketeering (Count One); Racketeering Conspiracy (Count Two); Murder in Aid of Racketeering, in connection with the Murder of David Avila Gomez (Count

Seven); Narcotics Conspiracy (Count 32); Use of Firearms in connection with the Murder of Miguel
Perez (Count 38); and Use of Firearms in connection with the Narcotics Conspiracy (Count 51).

On August 13, 2014, the defendant entered a plea of guilty to Count Two of the S5
Indictment, pursuant to a plea agreement with the Government.   Through his plea, the defendant
admitted his participation in the Murder of David Avila Gomez.   The agreement stipulated that the
applicable Guidelines offense level is 37, and that the defendant is in Criminal History Category I,
resulting in a stipulated Sentencing Guidelines Range of 210 to 262 months' imprisonment (the
"Stipulated Guidelines Range")

**C.      The Presentence Investigation Report**

The Probation Office issued its final PSR in this case on November 4, 2014.   The Probation
Office concluded in the PSR that the offense conduct yields a base offense level of 40 and that the
defendant has a Criminal History Category of I, resulting in a Guidelines range of 292 to 365
months' imprisonment.   PSR ¶ 171.   The difference between the Guidelines range calculated by
the Probation Office and the Stipulated Guidelines Range is the result of Probation's conclusion that
the defendant should not be awarded a three-level downward departure because "Strong and his
co-defendants targeted the victim for a robbery and came armed with guns to use means of force in
order to effect the crime if necessary."   PSR ¶ 172.   The Probation Office further reasoned that the
departure was not appropriate because it was a felony murder, therefore qualified as a first degree
murder.   The Probation Office recommended a sentence of 240 months' imprisonment – a sentence
below their calculated guideline range.   The Probation Office recommended 5 years' of supervised
release to follow.   PSR, at 34.

As is reflected in the plea agreement, both parties agree that the Guidelines for Strong are
appropriately calculated with a three level downward departure.

4

## III.  ARGUMENT

### A.    The Governing Legal Framework

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).   Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264.   As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."   *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).   In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita* v. *United States*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

## B.    A Downward Departure to the Base Offense Level Is Appropriate

The Sentencing Guidelines § 2A1.1 set for the appropriate base offense level for first degree murder. However, Application Note 2 to § 2A1.1 states "[i]f the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted." U.S.S.G. § 2A1.1, Application Note 2(B). The Application Note advises that "[t]he extent of the departure should be based upon the defendant's state of mind (e.g., recklessness or negligence), the degree of risk inherent in the conduct, and the nature of the underlying defense conduct." Id. As a preliminary matter, the parties do not dispute that the murder of David Avila Gomez was a first degree murder

6

because it was felony murder, that is a murder that happened during the commission of another felony, here robbery.   But to be sure, simply because it is first degree murder does not mean that a downward departure is never appropriate, particularly in light of Application Note 2(B) which addresses sentencing for felony murders.   As the Court may recall, at the trial of Felix Lopez-Cabrera the testimony of three cooperating witnesses about the murder indicated that the plans that night were to go do a robbery, none of the defendants had discussed murdering anyone and that one of Strong's co-conspirators shot David Avila Gomez when the shooter believed Avila-Gomez was attempting to reach for the gun.   To be sure, the cooperating witnesses also testified that Strong remained in the van and served as the driver.   There was no evidence Strong even held the firearm during that evening.   Accordingly, while the defendant is guilty of felony murder, which qualifies as first degree murder, and has accepted responsibility for his crime, the Government respectfully submits that the downward departure is appropriate given the defendant's role and the evidence of his state of mind.

**C.      The Court Should Impose a Guidelines Sentence**

Here, a significant sentence within the Stipulated Guidelines Range of 210 to 262 months' imprisonment is sufficient, but not greater than necessary, to comply with the purposes of sentencing.   Such a sentence would take into account the Guidelines and Section 3553(a) factors. Most significantly, a sentence within the Stipulated Guidelines Range would properly reflect the seriousness of the offense, provide just punishment, and protect the public.   Although the Government agreed to a downward departure, the Government does not mean in any way to understate the very serious nature of Strong's conduct and the fatal and unfortunate circumstances of that conduct.   As a member of the Bad Boys, the defendant engaged in several other assaults

and served as support and "back up" for other members of the gang which relied on his support to carry out their crimes.

While the defendant did not himself shoot Strong, there is no question that the defendant went out with a group of fellow gang members, seeking to engage in violence, specifically to carry out robberies so that Lopez-Cabrera could pay a drug debt.   Accordingly, Strong is responsible for Avila-Gomez's murder.   The plea agreement takes into account the defendant's role in the murder of Avila-Gomez as reflected in the three level downward departure, and the defendant should not be awarded additional leniency beyond that already afforded to him in the agreement.

A guideline sentence will serve a number of purposes in this case.   The defendant's sentence should also provide just punishment for his criminal activity connection with the BTG. The defendant's criminal conduct not only harmed a seemingly innocent individual with no gang ties and made the streets of the Bronx dangerous for law-abiding members of the community.   A substantial sentence is necessary to take into account the seriousness of the defendant's offense, provide just punishment, protect the public, and as noted by the Probation Office, provide needed medical and mental health treatment.

Likewise, a sentence within the Stipulated Guidelines Range would take into account the defendant's criminal history, and the need for specific and general deterrence.   The defendant's prior brushes, albeit fairly minor, with the law appear to have done little to deter him   A sentence within the applicable Guidelines range will ensure that the defendant and others similarly situated are aware of the serious consequences of gang activity, and will serve to deter such activity in the future.

Finally, a Guidelines sentence in this case would not create "unwarranted disparities among defendants." 18 U.S.C. § 3553(a)(6). The defendant is the first of the Avila-Gomez murder defendants to be sentenced. However, a sentence within the Stipulated Guidelines Range would be consistent with the Court's prior sentences for defendants who engaged in similar activity as the defendant.

IV. CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should impose a sentence within the Stipulated Guidelines Range of 210 and 262 months' imprisonment.

Dated:        New York, New York
              January 28, 2015

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York

                        By:    ____s/_____
                                        Sarah Krissoff / Jessica Ortiz /
                                        Micah Smith / Rachel Maimin
                                        Assistant United States Attorneys
                                        (212) 637-2200